GREEN v. SAN ANTONIO WATER SUPPLY CO. (No. 5787.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 21, 1917. Rehearing Denied March 28, 1917.)

1. CONSTITUTIONAL LAW ⬠63(2) — PUBLIC WATER SUPPLY—POWERS OF CITY.

Power to regulate and prescribe rates and prices to be paid to a water company enjoying granted franchise to use the streets for furnishing water is governmental in its nature, and can be exercised only by the body to whom it is intrusted and is nondelegable.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 109, 111, 112, 114.]

2. CONSTITUTIONAL LAW ⬠63(2) — PUBLIC WATER SUPPLY—POWERS OF CITY.

The governmental power to regulate and prescribe rates for water is inherent in the state, and, because there is no constitutional inhibition, the Legislature can delegate it to a municipality, which must exercise it as required by the charter.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 109, 111, 112, 114.]

3. WATERS AND WATER COURSES ⬠188(2) — PUBLIC WATER SUPPLY—FRANCHISES—CONSTRUCTION.

A franchise contract permitting use of streets for public water supply must be strictly construed in favor of the city, and in case of ambiguity or fair doubt it is to be resolved in favor of the public.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287.]

4. WATERS AND WATER COURSES ⬠203(8)— PUBLIC WATER SUPPLY — FRANCHISES — CONSTRUCTION.

Where a franchise contract for public water supply prescribed an express definite flat rate and a definite rate for water measured through a meter, which the company was required to install on request of a consumer, the company could not require the consumer to pay meter rent in addition to the meter rate for water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 294.]

5. WATERS AND WATER COURSES ⬠203(8) — PUBLIC WATER SUPPLY—FRANCHISES—CONSTRUCTION.

Where the franchise for public water supply excepted from the prescribed rate any rate under special contract, the company could not by requiring as a prerequisite to furnishing a meter, which on demand of a customer it was required by its franchise to supply, that the customer sign a contract to pay meter rent, charge for meter rent as well as water, such a contract being coerced, and not voluntary, especially where after the meter was installed the customer notified the company that he would pay no meter rent.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 294.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Injunction by C. S. Green against the San Antonio Water Supply Company. Decree for defendant, and complainant appeals. Reversed and rendered.

E. H. Powell, of San Antonio, for appellant. Taliaferro, Cunningham & Birkhead, John Lee Green, and Frank H. Bushick, Jr., all of San Antonio, for appellee.

SWEARINGEN, J. C. S. Green, the appellant, filed this suit to enjoin the San Antonio Water Supply Company, appellee, from cutting off the supply of water for domestic purposes from appellant's home in the city of San Antonio, Tex., which city had, by a franchise contract, obligated appellee to furnish appellant the water at rates fixed by the city. The injunction was denied.

Appellant's petition, in effect, alleges his cause of action to be that appellee is a quasi public service corporation enjoying a franchise contract made with the city of San Antonio to use the streets and alleys for its pipes, mains, and other necessary equipment for supplying water to the inhabitants of the city, and to charge therefor the rates fixed in the franchise grant, unless changed by the city; that appellee did furnish appellant water, but charged a rate in excess of the rate established in the franchise contract. The unlawful charge was made by charging the lawful rate and adding thereto an extra charge of 50 cents a month, designated by appellee as "meter rent"; that appellant refused to pay the excess charge of 50 cents a month, styled "meter rent," but tendered the amount due according to the established rate. Appellee refused to accept the correct rate, but demanded the excess rate also, in default of the payment of which appellee threatened to cut off the supply of water entirely from appellant.

Appellee answered by a denial and demurrer, and specially answered by alleging a contract addressed to appellee and signed by appellant, by the terms of which appellant applied for a meter and promised to pay the rate established by the franchise contract, and in addition thereto promised to pay 50 cents a month for rent of the meter.

By supplemental petition appellant averred that such an application was void, that there was no consideration to support it as a contract, and that the written application had been canceled by notice from appellant to appellee to that effect prior to the months for which the excess charge was made.

The evidence established the facts material to the cause of action. Those especially pertinent to our opinion herein will be mentioned hereafter.

The question presented for our consideration is: Did the franchise contract authorize

appellee to collect, in addition to the established rate, rent for the use of its meters when installed for the purpose of measuring water used by the customer?

The charter of the city of San Antonio is a special act of the Legislature, and empowers the city by ordinance to regulate and prescribe the rates, prices, and terms at which water shall be furnished for private purposes to its inhabitants by water companies. 12 Gammel's Laws of Texas, 333, § 57. Acting under that authority, the city, by ordinance, entered into a franchise contract with the appellee water company, in the third paragraph of which the rate for water measured through a meter was established at a definite price not necessary to mention, as it is admitted that appellee in the case at bar attempted to collect the established rate, and in addition thereto a monthly rent for the meter, which would be an excessive rate unless the franchise contract expressly or by implication authorized the appellee to collect rent for meters in addition to the rate for water. The franchise contract does not expressly authorize the appellee to collect rent for meters in addition to the established rate for the water. It does expressly require the appellee to furnish a meter when desired by the consumer; but is silent as to whether a rental shall be collected by the appellee company.

[1] It is well settled that the power to regulate and prescribe rates and prices to be paid by the inhabitants of a city to a water company enjoying a granted franchise to use the streets for furnishing water is "governmental in its nature, and the power is intended to be exercised for the benefit of the inhabitants of the municipality. Consequently it must be exercised by the body or officials to whom it is intrusted, and cannot be by them delegated to others." 3 Dillon Municipal Corporations (5th Ed.) p. 2233, § 1325; Id. p. 2133, § 1303.

[2] This governmental power to regulate and prescribe rates is inherent in the state, and in Texas, because there is no constitutional inhibition, the Legislature can delegate the power to a municipality, as was done in this case by the legislative enactment of the San Antonio charter. The power must be exercised in the manner required by the charter—that is, by ordinance.

[3] It is also well settled that franchise contracts are to be strictly construed in favor of the granting power, in this case the city. In case of ambiguity or fair doubt the settled rule of construction is to resolve the matter in favor of the public. 3 Dillon, p. 2141, § 1304, note 1.

[4] The franchise contract before us prescribes an express definite flat rate and a definite rate for water measured through a meter, which the appellee is required to install upon request of the consumer. Under the provisions of the franchise contract the appellee company cannot impose upon the consumer a charge for meter rent in addition to the charge for water. 3 Dillon, p. 2217, § 1320.

[5] It appears to us from the record and brief that counsel for appellee concede the law to be as we have hereinabove stated. Appellee's real defense, it seems, is that the franchise contract expressly authorized special rates when made by contract between the water company and the consumer. Clause 18 of the franchise contract is:

"That the rate fixed above for private consumers shall not be applicable to any special contract now in existence, nor shall anything in this contract affect or interfere with the right or power of the waterworks company to make any special rate, or contract, with any corporation, firm, or person."

Construing the above-quoted provision to authorize a special rate if agreed to by the appellee and appellant, a written application for a meter was required of appellant in which it was stated that appellant would pay the regular rate for measured water fixed by the franchise contract and 50 cents a month in addition as meter rent. Such an application addressed to appellee and executed by appellant was introduced in evidence. For the proper determination of the case before us it is not necessary for us to decide whether under paragraph 18 of the franchise contract a valid contract for a special rate can be made by the company and the consumer, and we do not undertake in this opinion to decide that question.

We do decide that under the pleadings and evidence as shown by the record under consideration, if the application or special contract could under any circumstances be valid, under the facts of this present case it is not a defense. The testimony of witness for appellee is that appellee required the consumer to sign an application promising to pay the regular rate for water, and in addition the meter rent, before a meter would be installed. The franchise contract does not give the water company this power, as shown above. This same witness also testified that upon request from the consumer the meter would be removed, and the flat rate for water prescribed in the franchise contract collected. The evidence shows that on the 1st of April the consumer notified appellee that he would not longer pay the meter rent. The franchise contract required the appellee company to comply with this demand or notice and appellee's witness testified, as stated above, that the consumer could change at will from meter rate to flat rate. The meter rent demanded in the case at bar was for April and May, 1913, two months after the notice to appellee that meter rent as provided in the special application would no longer be paid.

Under these facts we conclude that the application agreement was canceled, and no meter rent could be legally demanded, even if the application was ever valid. The undisputed evidence shows that appellee com-

pany would refuse to furnish appellant with water unless the unlawful meter rent were paid.

The evidence further shows that the appellee company arbitrarily compelled consumers to sign applications, promising to pay meter rent in addition to the rate prescribed by the city, and, after thus requiring the promise, justified the excess rate by denominating the forced promise, a voluntary contract for a special rate.

The injunction prayed for should have been granted. The judgment of the trial court is reversed, and judgment here rendered restraining appellee as prayed by appellant.

Reversed and rendered.